At this time, we'll hear Simmons v. The United States. Good morning, Your Honor, and may it please the court. My name is Allison Frick, and I represent appellant Ayanna Simmons on behalf of her late husband Idrissa Kamara. In Dolan v. The United States Postal Service, the Supreme Court warned against unduly generous interpretations of the exceptions to Federal Tort Claims Act liability, and advised that courts must examine those exceptions precisely in accordance with their wording and the purpose of those exceptions. And that's what this Court must do here today. Here, the government's motion to dismiss plaintiff's claim should have been denied, because the government has failed to show that plaintiff's claims fall under the discretionary function exception, for two reasons. First, the government has failed to show that it made any decision at all to stay silent about the threat that Kevin Downing posed to the workers at 201 Verrick Street. I'm not sure what you mean by a decision to stay silent. They made a decision to tell the employer of your client's deceased, and made a decision to post additional guards on the eighth floor, where the Department of Labor had its offices. And then the question is whether that was a discretionary exercise that was designed to protect against a threat of violence by a person who was thought liable to go postal. Yes, Your Honor. This is a very important point. First, it's important to set out at first that the government was in the unique position of knowledge here. They were the ones receiving the threats. And so the only way— Not after they told the employer. So they made the decision to follow up on Judge Jacobs' point to tell the security contractor of Downing's threat without requiring, as a part of its contract, that the threat be communicated to individual guards. Now, so once they convey it to the security company, they are not the only ones in possession of the information. The management of the security company, your client's employer, the deceased's employer, knew it as well. But the real question is whether the discretionary decision to handle this threat by hiring a security company and telling them the nature of the threat comes within the exception. Yes, Your Honor. And here it's very important to point out that plaintiff does not concede and does not allege anywhere in her complaint that the government did tell FJC of the Kevin Downing threat. And I direct you to paragraphs 27 and 28 of the complaint. It's drafted very carefully. In paragraph 27, we allege that the government was aware of the threats and asked FJC to post additional security at the Department of Labor offices on the eighth floor. And in paragraph— Did they tell them why? And we don't know at this point, Your Honor. We have not alleged that they did. And very importantly, in their opportunity to submit a factual declaration in this case, the government did so and was also silent about whether they told FJC, which I think entitles us to the negative inference— Why does this matter? If they made a decision to ask for additional guards at the eighth floor office, why isn't that a decision that they made? And doesn't that imply that they made some assessment of what are we going to do about this? If we don't answer, we will ask for additional security to be posted at the eighth floor. Yes, Your Honor. Why is—and yes, there's a negative inference that they decided that they weren't going to do anything else. So what our complaint alleges is that the failure to warn was the negligent act in question. And the Supreme Court has made it clear that courts have to examine exactly what the negligent act being alleged is and whether that act falls under the discretionary function exception. But— Not the government. Isn't the question that they made—I mean, we have these—let me put this in the context of the other cases from other circuits that also deal with failure to warn and say there was a decision that they wouldn't do that and that's a policy-type decision. What's wrong with that analysis or why doesn't it—is that analysis wrong? And if not, why doesn't it apply here? It depends on the case. There are some cases that the district court relied on that are inapposite which we could discuss. But I think what's most important for our purposes is that this court has addressed a very analogous case, a failure to warn case, the Andrew Lawness decision. And this court held in that decision that the government's failure to warn of a known threat could not be—did not implicate policy. And what's central about that decision that is analogous here is that similar to this case, that case involved another agency, not the federal government, that was overseeing the day-to-day operations of the lab in question. And yet still, the court found that the government's failure to warn was not protected by the discretionary function exception because it could not and did not implicate public policy. And this court emphasized— Yes, Your Honor. And that the government— That's because your client's deceased was at that desk at that horrible moment. But on the other hand, who is at that desk at any given time is something really only known by FJC based on, you know, rotation, vacation, replacement, family leave, people's schedules. How do they know? How is it going to know with all the people in the building who are doing security in a federal building? That's a lot of people. How are they supposed to know who at any given time is going to be at the desk? Or do they tell everybody and cause panic in the whole building that they expect some nut to arrive who has a desire to hurt people in the Department of Labor? Well, as we've said, the allegation here is that the failure to warn in general about this known threat that the government was in the unique possession of, had the unique knowledge about, was negligent. But to the extent that there's— Not even that it was a policy judgment, because I think in the asbestos litigation, we stated the standard as doesn't matter whether they actually balanced this against that and made a complicated decision. What matters is the exception applies where there is room for policy judgment. So why isn't there room for policy judgment as to whether the best course of action is to post additional guards at the eighth floor, where the best course of action is, whether they did it or not, to just tell the security company and let them decide how best to handle the threat, or to tell each and every security guard in the building, or to post a general announcement to everyone? Why isn't that decision of which course of action to follow something that allows room for policy judgment, among other things, balancing the risk of panic versus the risk of alertness? Your Honor, whether it involves policy judgment is the government's burden to show. And that is why so many of these cases are decided at the summary judgment phase. So whether they did make a policy judgment has to be determined— No, no, no, no, no, no. That's what I just read to you. We said it doesn't matter whether they did make a judgment that was an elaborated policy judgment. The question is whether the decision that they made was a decision that allows room for policy determinations. Yes, Your Honor. Why isn't that—why didn't they—and I thought that's what the affidavit that the government submitted attempted to show. And you said in response, I thought, that that's not good enough because it doesn't show that they actually did balance all these considerations. I have a number of responses to that, so let me just take them one by one. First, let's talk about the asbestos decision. So the asbestos decision was decided prior to this Court's decision in Colthurst and this Court's decision in Andrulanus. So in Colthurst, this Court held, again, that only, quote, considered judgments are protected by the discretionary function exception. And in Andrulanus, again, we see that it's—that it holds that the failure to warn did not implicate public policy. So that's the first distinguishing factor. Also in the asbestos decision, this Court emphasized that the discretionary function exception does not apply where no public policy is implicated. And finally, it's very important to look at the context of the asbestos decision. That was a question about waging war, the area in which the executive is given the most deference in its decision-making capacity. It's when the government is acting, really, at its peak policy-making function in deciding how to wage war. The whole point of the discretionary function exception is to protect against judicial second-guessing of legislative and administrative actions and decisions. That's from the Varig case in the Supreme Court. And this Court has, in the asbestos case, discussed the different context, when the government is working at its peak policy-level, policy-making context— Why isn't providing security at vulnerable government installations more toward the war end of the spectrum and less toward the other end? Because the government here was acting in its capacity as the landlord of an office building. That's what this building was. It was an office building for federal workers. And the liability here would be the same if it was a private landlord. And that's exactly what the Federal Tort Claims Act was meant to do. It was meant to allow the government to be liable for acts of negligence when it is acting in its capacity similar to an individual or commercial actor. And that's the important context that we have here. And— Can I go back to perhaps a misreading of your complaint that prompted one of my earlier questions? I looked at paragraph 31, where the allegation is, upon information and belief, neither GSA nor USDOL directed FJC to warn Mr. Camera about Mr. Downing, and perhaps too readily assumed that that meant that FJC was told, but had not been given that further instruction to warn Mr. Camera. Now, this allegation is pleaded only upon information and belief. So I'm a little concerned as to whether you're alleging that GSA and USDOL didn't tell FJC about the threat, or that they did, but they didn't tell them to warn Mr. Camera. And why I want you to focus on that is, I think that if they told FJC, but didn't tell them to tell each employee, you have a more difficult policy argument to make. If you're arguing that they didn't even tell FJC, then I'd like to hear what your argument is on that, and also have you explain why, on an information and belief pleading over, you know, what is it, almost 15 pages, you didn't make that clear, if that's your contention, that the reason they're negligent is that they didn't even tell the people that they employed, the company they employed, what the nature of the threat was, and no policy reason could justify that. Help me out with what you're claiming here. Thank you, Judge Radji. It's a very good question, and I think it's really important. To the extent that the question of what the government told FJC, to the extent that that's the linchpin of this discretionary function analysis, I don't believe it is. But to the extent that this court believes it is, and to the extent that it was relied on as such by the district court, who improperly extrapolated from the complaint an allegation that FJC had been told, then this case really needs to be remanded for discovery to determine exactly what was told to FJC. It's very notable. But why? You talked about what was only within the government's possession. This was your client's employer. I mean, in the aftermath of all of this, you don't know whether the employer says it was told or wasn't told that Mr. Downing was the threat? That's right, Your Honor. We don't know. And it's important from the ... The government had the opportunity to submit a factual declaration, and it did so. And yet it's silent. Maybe not from FJC. Well, in any case. It's silent on whether the government told FJC about this threat, and I think the only way to read that declaration is to draw the negative inference that it did not tell FJC. And again, to the extent that this is important, this will be fleshed out in discovery. And should the facts arise that FJC was told, the government is welcome to bring this claim again at the end of discovery, unlike, say, qualified immunity. I'm also saying, it seems to me, or are you saying, that that goes to the question of was there negligence? In other words, if on the merits, the question of ... Suppose a landlord had a private security guard company, and the landlord told the security guard company, you know, we've got this guy, we think he's a threat, and you should be alert to that and figure out what, if anything, you ought to do about that in your expertise as a security company. I'd imagine there'd be a pretty good case that there was no negligence. But what we're asking is a slightly different question here, which is about the application of the discretionary judgment standard. And I think that also goes to the question of if what the government decided to do was simply to ask their security company to put an expert guard at the eighth floor and not tell them exactly what for, and not tell them ... And by the way, warn everybody that you employ about the ... Give them the picture of this guy or something. Was that a judgment that allows room for policy determination, which is a different question than was there negligence? You see what I'm asking? I believe I understand, Your Honor. The government bears the burden of showing that whatever actions it took were grounded in considerations of public policy, and it has failed to do that. It's factual declaration ... That's what I'm wondering about. That's why I keep going back to the asbestos formulation. Yes. You know, Andrew Alonis is a case where the guy's boss basically told him, go in that room and do these functions, and didn't say, but watch out because there's a risk of getting rabies if you don't handle it with care. I mean, isn't that the basic scenario there? I don't believe so, actually, Your Honor. The CDC, the government entity that was ultimately found liable in that case, was providing the strain of rabies for the experiment. But the experiment day to day was overseen by a different agency, a state agency that actually the government ended up bringing in as a third party to that lawsuit and sued for contribution, which of course the government could do here as well. And so, it's similar to the case here ... If you thought that there was some negligence on the part of the contractor or not? There's a workman compensation claim that's available. Oh, right. Of course. I'm sorry. Right. So, just like in Andrew Alonis, this case, the government has argued that because it didn't oversee the day to day management of the building, that that somehow immunizes it. But again, the discretionary function exception, it's not sufficient just to find that an act was discretionary. The Supreme Court, in multiple opinions, is very clear that that discretionary act must be grounded in considerations of public policy. Susceptible to policy analysis. Right. So, the susceptible language comes from the Galbert decision. But that Galbert decision quoted and reaffirmed that only actions grounded in considerations of public policy are protected by the discretionary function exception. And the Galbert opinion is quite useful here because it sets out, again, in the footnote following that language on susceptibility, it sets out examples of action that is discretionary but that wouldn't be protected by this exception. For example, driving a car. Right. They say that involves uses of discretion every day, but that's not the type of thing that the discretionary function exception is meant to protect. As we've explained what it's meant for. It's meant to protect against policy making. But, of course, taking the susceptibility language or even the government's arguments to their broadest conclusion, one could imagine that, let's say, a government worker is driving a car and he's driving overnight because that saves the government money, not having to get him a hotel room. He just keeps driving to the next meeting. And because of his exhaustion, he negligently causes an accident. And that could be susceptible to policy analysis because it involves government resources. Any government decision is ultimately going to involve government resources. A decision to pick up the phone or to send an e-mail, the phone company, the phone bill and the e-mail bills are paid for by government resources. So it can't just be that some hypothetical tenuous line to government resources. The question is not whether some hypothetical tenuous line applies. The question is whether, in this case, there are real and substantial policy issues that need to be considered when you decide how to protect against a berserk former employee. And it may be that it is better to put the additional resources at the place where the rather than put the whole building into a state of panic. But the government, it's the government's duty to put forward what those policy arguments are. And it has failed to do that. The question is, is it susceptible to a policy? But it's still the government. I just articulated one. I don't know whether the government did that. The government frequently does things that are irrational. But the question is, is it susceptible? I've just posited one. Why is that a rational decision? This court held in the Coldhurst decision that it is not enough for an action to be discretionary, that the United States must show that that action was grounded in considerations of public policy. For the reasons that I explained, the susceptibility language is still about being grounded in public policy. And we have still yet to hear what public policy could, let alone did, ground There's something wrong with that one that Judge Jacobs just elucidated as a possible policy consideration, which is not just about we don't want to spend the money. It's about balancing the desire to be on alert and to provide additional security against the risks that come if you widely broadcast something about a threat that in this case happened to eventuate. But with the benefit, that's, we know that with the benefit of hindsight, with the benefit of foresight, somebody is making a risk assessment, aren't they, about what should be. And again, the question is, what should they be doing? What could they be doing? Not did somebody fail to consider all the right things, but is it not susceptible to a judgment? Well, this court rejected that type of argument in Andrew Lonis, because, of course, the decision to warn against faulty lab equipment in a rabies experiment conducted by the CDC was, in my opinion, susceptible to policy analysis. One could imagine if you warn about this dangerous equipment, it will be difficult to retain. There you've got one person who goes into an environment of danger. And we aren't really talking about any, there's no downside in warning him about the danger of rabies. It's not, the analogy would be warning everybody in the building about the danger of rabies. Nobody's going to come into work. I disagree, Your Honor, that there's no conceivable downside. I think here, if that warning about the faulty equipment had been made, the experiment could have been shut down. That absolutely would have implicated government resources. You reserved a couple minutes. Yes, thank you very much. You just challenged the government, and fortunately, we have the government right here. Good afternoon. Good morning, I hope. Good morning, Your Honor. May it please the Court, my name is Andrew Kraus from the U.S. Attorney's Office, Southern District, on behalf of the government. The events that give rise to this case are undeniably tragic, but the district court correctly held that the claims in this action are barred by the discretionary function exception, and that decision should be affirmed. The complaint on its face fails to allege facts that support a claim that falls outside the scope of the discretionary function exception. There's no dispute, as we know from the briefs, that the alleged actions of the government here involved the exercise of judgment or choice, and the decisions that are set forth in the complaint are susceptible to policy analysis. Just to address one point that came up about whether the complaint alleges that FJC was informed or not, our reading of paragraph 28 of the complaint certainly is that FJC was informed. The language— Informed about what? About the need for somebody on the eighth floor, or about the danger that this particular person could enter the building? Well, certainly as to the need for security on the eighth floor, although the paragraph does say that following the request, which would be the allegation that there was a request for an additional security guard on the eighth floor, and in response to the known threat  Right. What the government did in response to the known threat was have an FJC-employed security guard posted full-time outside USDOL's office. But that paragraph doesn't say that you told FJC that doweling was the threat. It could be understood that you didn't, at least from that paragraph alone. And that gets to the point, is the government's argument that its decision how much to tell FJC about the nature of the threat was part of its policy decisions about how to address this threat? Well, I think the answer, Your Honor, is that it's not dispositive whether the government told FJC or not. That would mean, though, that you would have to say whether it told or didn't told was part of its policymaking discretion. And I'm just trying to make sure that I understand that you're saying that, that if the decision was not to tell them, viewing the allegations most favorably to the plaintiff, you're saying that still falls within your — within the policy area that allows the agent to exercise discretion? Yes, Your Honor, because our argument is that the government's response to the alleged threat posed by Mr. Downing, as set forth in the complaint, the government's alleged response to that threat is susceptible to policy analysis. How the government chooses to respond to an alleged threat, whatever those decisions might be, in this case, the allegation is that an extra security guard was requested for the eighth floor. The allegation is that an extra security guard was provided for the eighth floor. That the government decision was to take those steps in order to respond to the threat. I'm looking at this most favorably to the plaintiff. The argument is that, I think, that whatever decisions you made about how to protect, guard on every floor, guard on only this floor, whatever, whatever policy decisions you made on that, the decision not to tell even the company that you employed what the threat was is so negligent that it can't be viewed as part of the — to be susceptible to policy analysis. Tell us why we shouldn't reach that conclusion. Well, Your Honor, there's a lot of discussion about the Andrew Lawness decision. The key language in Andrew Lawness is that the government ignored the unsafe laboratory conditions. Ignored. I don't think there's any plausible reading of this complaint that suggests that the government ignored the alleged threat posed by Mr. Downing. The complaint sets forth various steps that were taken, and those steps are susceptible to policy analysis. The possibility exists that there could be a set of allegations where the government perhaps acted in a way that would fall outside the discretionary function exception, but I don't believe that that's this complaint. Well, help me out with the limits of your argument. Suppose there's an ice storm and the steps of the courthouse are iced over and somebody slips and falls, and they sue the government, GSA — not me, I'm not responsible for this, but somebody in the courthouse is, I assume it's GSA — the government is sued for failure to clear the ice. And the response is made, well, you know, we do clear the ice, but we do it on a certain schedule. There's only so many employees we can have working on this, and, you know, we think we did enough. Was that — is that a policy determination, such that you don't even get to where you would get with a private building owner, assessing whether that — the standard that they actually used was negligent or not, and they should have cleaned the ice off more frequently? I believe there are cases along those lines, where district courts at least have evaluated the government's actions with respect to maintenance of property, and I think they come out different ways based on the factual pleadings or, you know, perhaps in declarations or whatever it might be, based on the timing of the motion. What about Ms. Frick's example of the guy driving — I'm sorry — I was going to direct you to Ms. Frick's example of somebody deciding to drive overnight to save the government money and falling asleep at the wheel? Right. It's hard for me to imagine a discretionary function analysis applying in that situation, Your Honor, in part because various cases have expressly discussed the example of driving a car and how it would be very difficult to see how traffic accidents could fall within the discretionary function exception, even though, yes, of course, certain aspects of the law are discussed every day, but that is much more of a case of simple negligence or pure negligence rather than susceptible to policy considerations. The individual decisions of the driver don't really reach that level. Is it because driving when you're exhausted is outside the range of permissible policy choices? I'm trying to understand what principle you would give us to guide how we would decide when the line is crossed. I think that's part of it, Your Honor. I think that there's really not an argument to be made that driving while exhausted is going to be a defensible decision, but at the same time, the policy considerations involved here regarding security decisions at federal buildings and how to respond to security threats present any number of different — Well, here, too, are there possible choices you could have made short of ignoring it? That would not be permissible? I mean, if you had put unarmed guards there, would you be susceptible to a suit, or even there would it be grounded in policy analysis? I mean, the choice to use unarmed guards, I think, would be susceptible to policy analysis. There might be any number of reasons why you would choose to have fewer armed personnel in a building. So then let's deal with what we've got here, is deciding to put guards there but not telling either the security company or individual guards the precise nature of the threat, something that you say falls within your policy, just the area of discretion. Yes, Your Honor, although I still am not sure I read the complaint that way. I still believe that paragraph 28 suggests that FJC wasn't — Well, I wrote it initially myself, but I understand from counsel that that's how they're urging us to — And why do we need to parse the complaint so closely? This is not a 12b6 motion. It's a 12b1 motion because it goes to jurisdiction, and that means that the government's affidavit is something that can be considered. And you had the opportunity to say, this is what we did. We told the security contractor. And that's not said there either, it seems to me, or if it — it would have to be parsed at least as closely as we're parsing the complaint to find it. That's true, Your Honor. The declaration does not specifically address the precise steps taken in response to the threat. Then why don't we have to consider this on the basis of you didn't tell the contractor? Maybe that's not true. Maybe if that turns out to be the dispositive fact, maybe somewhere down the road the government will clarify that. But at this moment, on this record, you know, I think the key policy decision that comes up in the Nairobi case and in the — there's an Air Force-based case from other circuits. The key policy decision seems to be the one Judge Jacobs referred to. You don't want to cause a panic. But what would be the policy justification for not telling your security professionals that the reason you want some extra beefing up here is there's this guy and you want to look out for him? That wouldn't put the whole building in a panic. That tells your security experts, here's the threat. Go figure it out. Yeah. I think there are other policy considerations at issue in the — Well, tell me what the policy considerations could be that would justify not telling the people that you've hired to provide security that there is a particular threat that they maybe should be alert to. Well, I mean, one policy consideration that's referenced in the Ninth Circuit Sigmund case is a privacy consideration. In that case, the privacy of the service member who had been discharged, sharing personal information about that individual as part of a threat assessment was considered a policy rationale that was — Against when you're hiring a company to do it? I mean, this happens all the time in this building with respect to individuals. And the marshals are given photographs of individuals whose presence in the building may create a risk. And so, the question is, are you saying you have a privacy concern about the — But, Mr. Dowling — — when he's made threats like this? No, I'm just referencing that that was an additional policy consideration that was taken into account in Sigmund. Well, we're trying to figure out what policy choice to which we would defer would inform a choice not to tell the security company the nature of the threat. Your Honor, again, I mean, the policy considerations that were set forth for security-type decisions in the Federal Building at 201 Varick Street set forth in the Ines Declaration included budgetary concerns, agency priorities, balancing the need to protect the building — The budget isn't implicated in not telling them who the threatening party was. How are any of those concerns implicated? That's true. The budget concern is not really an issue there. I just am referring to the policy considerations about security decisions that were described in the Declaration. No, but I guess where I'm coming to in the end is, if we assume that there was no disclosure to the employer, let alone the employee, how do we sustain the judgment in this case? Again, I think that the decision as to whether or not to inform and how to respond to the threat falls within the rubric of security decisions at the Federal Building, and I'm not sure what the reason would be why they would choose to provide certain information or not provide other information. Whatever decision they make, whatever they do, since it involves a security threat, is automatically exempt? No, Your Honor. I don't think that's what I'm saying. I think here there are allegations that specific steps were taken to attempt to respond to the threat that Mr. Downing allegedly posed to the building. Suppose Mr. Downing called up that morning and told his former boss or somebody at the Department of Labor, I'm coming this afternoon with a bomb to the building, and the decision that's made is maybe we better put an extra guy on the eighth floor. That would be a security judgment that would be because, after all, it is a security judgment. They made a decision on how to respond to the threat. That's what they chose to do, and that could not be evaluated by a court or by a jury? I think that set of facts, Your Honor, would be harder to argue that it's purely susceptible to policy considerations because of the nature of the response. It sounds like there is some overlap between the question of is it a policy judgment and just how negligent was it, what is alleged here? There are cases, that's why there are cases like Angelonis, where there is an argument made that policy considerations apply, but the court has found that the complete lack of response was so negligent as to be outside the scope of a policy, a considered policy rationale. Are you in a position on remand to represent to the district court that the company was told that Dowling was the threat? Am I in a position to say that right now, Your Honor? I'm just trying to figure out whether, at least to the extent any of us may think that if that had been the record, this would be a more straightforward case, whether remand for supplementation of the record is warranted. We don't want to engage in futile exercises. You started your argument by saying that's how the papers can be read, and since we have no question about that, I'm asking you whether you can represent to us that you can supplement the record. You want an opportunity to do that before the district court to show that at least you told the employer. Your Honor, throughout this case, we've relied on the allegations in the complaint, and we have noted in briefs in both the district court and in this court that we do not accept the veracity of those allegations, but that we have for purposes of this case, for this . . . Could you supplement the record by saying that the employer was told? Standing here today, I cannot commit to being able to do that. Thank you. Thank you, Your Honor. We'll hear rebuttal. Thank you, Your Honors. I wanted to start just by going back to the Dolan decision by the Supreme Court because I think it can ground this discussion, and in that decision, it held that the general rule that waivers of liability are construed in favor of the government does not apply to the Federal Tort Claims Act. So I think it's important for us when we're thinking about this, in light of the fact that it's also the government's burden, that here we really need to think about what it is that the government is arguing and what they've put forward. So . . . What happens on remand if we say, well, they haven't shown it yet, and they put in an affidavit from somebody in the Department of Labor or GSA, plus an affidavit from somebody at FJC, I think that's the name of the company, that they both say, yeah, we had a discussion, they told us about it, and we made the decision, we, the company, made the decision not to remand. We didn't think of it. Or maybe even, we actually did tell security guys, I don't know what they'd say, but let's put that to one side, that there was such a record made. Would, I take it you'd still be arguing that this is not a discretionary judgment? Well, again, the test isn't whether it's a discretionary judgment, that's the first part. It was involved in policy. That the policy decision . . . Right, grounded in public policy. That the policy decision was to delegate to the security professionals what to do about the threat beyond putting an extra guard on the eighth floor. Yes. And they did tell the security professionals about it. Would that be a policy-driven decision? Your Honor, I believe that if we come out in discovery, and it turns out that the government told FJC the nature of the threat, told them who Kevin Downing was, gave them a photo, to be honest, we'll be in a much tougher position at the end of discovery when the government wants to renew its motion. We're not there yet. And all we're asking for . . . Why can't they do it now? This is still a 12B1 situation. Or why couldn't the discovery just be, you're allowed to depose those two guys who gave the affidavits? We believe that jurisdictional discovery would be helpful here if Your Honors believe that it would be useful. I think at this point it makes sense to remand for plenary discovery because I think ultimately the discovery in this case is going to overlap almost entirely with what would be jurisdictional discovery. So I don't think it would actually be efficient to break it up. I think what we could do is have discovery and, if necessary, renew this motion just like other cases where this comes up after discovery or at summary judgment. Let's go back to the question of whether these decisions involve policy analysis. What you had is a threat by a disgruntled former employee against the Department of Labor. They're on the eighth floor. So the decision was made to post somebody, additional security, on the eighth floor. Now, that's a threat location and you have a policy decision to respond at that location. Now, if they didn't tell the guard, or they didn't tell the company to tell the guard, look out for this guy Downing, now that would be very stupid. And if Downing had penetrated to the eighth floor and shot people at the eighth floor, that would really matter, that they never told the guard who to look out for or what he looked like. But if he had gotten off at a different floor, the Department of Agriculture, and shot somebody there, I think that's something that they don't have to post somebody in every department. Why isn't this a policy analysis, or possible policy analysis, to decide to respond only at the threat location, at the location where the threat has been made? Well, for a couple of reasons. First, if they believe the threat is real enough to secure the eighth floor, somebody has to get through the lobby to get to the eighth floor and go through security there. But if you want to, the thing is to get through the lobby to the eighth floor, if what you're planning to do is attack people on the eighth floor, right? Well, but presumably that person would have to go through security, a magnometer, so hopefully their weapons would not actually make it to the eighth floor. So putting the security guard at the eighth floor, if you're actually concerned about somebody arriving with dangerous intent, might not make the most sense. But I don't think we should be collapsing- And everything you're talking about is policy analysis. Everything you're saying is policy analysis. I actually agree with you, but it's policy analysis. I think, Your Honor, to go back to the discussion that we had had earlier, if any hypothetical, if we sitting here in the court can come up with any kind of hypothetical reason that something could be construed as policy, and if that's all that's needed to immunize government conduct, then- Why is it fantastic to post a guard at the location which corresponds to the threat? Our complaint doesn't allege that posting a guard on the eighth floor was negligent. Our complaint alleges that the failure to warn the frontline security staff about this threat was negligent. And the cases that are examining the discretionary function exception look carefully at what's being alleged as negligent and determine whether those acts fit into the discretionary function exception. And we see that as the best example in the Ruiz case. The Ruiz case involved a four-year- That almost loses the immunity because it suggests that if, in carrying out a policy decision, you do it negligently, you can be liable. And I'm trying to understand why you're not pushing us to that conclusion here, because that one I would have trouble reaching. I agree, Your Honor, and that's not what I'm arguing. Okay. First, it's important to point out that the discretionary function exception is not immunity from suit. It's immunity from liability. And that's why we have a different standard than, say, qualified immunity. So if you look in the Ruiz decision, the court there parsed each allegation of negligence that the plaintiff made there and to determine which of those actions, if any, fell within the discretionary function exception. And some of those actions, this was at the airport where the young girl and her grandfather were detained coming in from Guatemala. And the court in Ruiz found that some of the actions that the CBP took were immune from suit, but then it found that other actions that the CBP took could have no conceivable policy justification, even though, of course, they were within the realm of the CBP's efforts to enforce immigration law, to secure the border, and to, you know, detain this girl in a way that they could figure out exactly what was going on. But that broad analysis, that broad policy objective, was rejected by the court in the Ruiz decision. But what about as to each action? I don't know how a negligent action is ever going to be viewed as falling within the realm of permissible policy. Well, again, I don't think that the touchstone is permissible policy. That is, as Your Honor is suggesting, that gets us to the question of negligence. The question is whether there were policy, whether there was a policy basis for this. So, for example, in the Andrew Lanis decision, that I think is the most on-point decision that any of the parties have cited in this case and that the government has not really known about, and that it failed to warn the person most directly involved with that threat, even though there was an intermediary agency that was supervising the day-to-day activities of that lab. But in that case, it was known that that person was going to be exposed to that risk. Here, Mr. Downing may never have shown up. Mr. Downing, it's commonly assumed, in fact, that people who threaten to do a thing actually are not the ones who do it. So there's a very substantial difference between knowing that someone's going to be exposed to a threat and having a potential threat. There are a lot of crazy people out there. Failure to warn cases always involve the potential that a threat doesn't materialize and doesn't injure somebody. So in Andrew Lanis, if the lab technician had not been infected with rabies, we could be sitting here saying, well, they didn't know for sure that he would be exposed and he would be fine. But the government knew that he would be exposed to rabies. In this particular case, no one knew if Mr. Downing would show up from one year's end to the next. Mr. Downing might reconcile himself or go after some other target of obsession and craziness. This is not... I mean, you're looking at this, I believe, as Judge Lynch suggested earlier, looking at it in hindsight, rather than looking forward to decide whether, in exercise of policy decision, what should be done about a person who's threatening to kill people on the eighth floor. Well, again, we're not talking about what should be done. That's the ultimate question on the merits. Whether the government acted reasonably. All we're asking for is the opportunity to have discovery, to learn what happened, and to learn what the government told or what it decided not to tell. That's what the discretionary function exception is meant to do. The discretionary function exception is meant to protect against legislative and administrative decisions and actions, to protect those actions from judicial second-guessing, when there's no action. It could not be grounded in policy that they chose not to tell what the nature of the threat was. Even though they provided for an armed guard, the fact that they didn't tell the guard or his employer what they were protecting against could not fall within the realm of policy. And I believe that that... I agree with that, Your Honor, and that is squarely in line with the Andrew Lawness decision and with other decisions regarding the failure to warn. See, I have problems reaching that conclusion if they told the employer. The fact that they told the employer but not the individual, that that couldn't fall within the realm of policy I have trouble with. You're arguing, though, that even if they told the employer, not telling the individual guard, the deceased here, your client's spouse, that that would not fall within the realm of policy. Yes, Your Honor. We're arguing that the government has failed to show what policy considerations grounded a decision to stay silent about this known threat. Thank you. Thank you, Your Honor. Thank you both.